**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Torres Consulting and Law Group, LLC,<br><br>              Plaintiff,<br><br>v.<br><br>Department of Energy,<br><br>              Defendant. | No. CV-13-00858-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 16), Plaintiff's Cross-Motion for Summary Judgment and Response (Doc. 18), Defendant's Response and Reply (Doc. 20), and Plaintiff's Reply (Doc. 22).  For the following reasons, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion will be denied.

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party carries its burden of demonstrating that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A material fact is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Once the moving party has carried its burden under Rule 56, the party opposing

summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The fact are "viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     FACTS**

On July 31, 2012, Plaintiff Torres Consulting and Law Group submitted a Freedom of Information Act ("FOIA") request to Defendant Department of Energy ("DOE") regarding its Energy Systems Integration Facility ("ESIF") construction project located in Golden, Colorado. Torres sought certified payrolls from MTech Mechanical Technologies Group and Diamond Fire Protection, two subcontractors of J.E. Dunn, the DOE's prime contractor on the ESIF. (Doc. 17 ¶¶ 5-7). Specifically, Torres sought rate of pay, worker classification, fringe benefits, hours worked, names of contractors and subcontractors, and project identifiers. (Doc. 12). Torres sought the information to assess compliance with the Davis-Bacon Act, a federal law which requires contractors and subcontractors on federally funded projects to pay their laborers no less than the prevailing local wage.

On August 14, 2012, the DOE produced MTech's certified payrolls but redacted the individual employees' names, social security numbers, hours worked, net and gross wages, payroll deductions, and other withholdings. (Doc. 15 ¶¶ 23-25). A week later, the DOE produced Diamond Fire Protection's certified payrolls for the requested dates, again redacting the same information. The DOE justified the redactions by raising two FOIA exemptions: (1) Exemption 4, 5 U.S.C. § 552(b)(4), which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential" from disclosure to the public; and (2) Exemption 6, 5 U.S.C. § 552(b)(6), which protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted

invasion of personal privacy." (Doc. 16).

In September 2012, Torres filed an appeal with the DOE's Office of Hearings and Appeals, challenging the redactions made under FOIA Exemption 4 for both disclosures. (Doc. 17 ¶ 35). It did not challenge any redactions made pursuant to Exemption 6. (Doc. 17 ¶ 39). Torres sought disclosure of each employee's wages, including hourly rate, total pay, fringe benefits, and hours worked but agreed with the redaction of personal identifying information. (Doc. 17 ¶ 42). The Office of Hearings and Appeals denied the appeal, finding that the requested information was properly redacted. In response, Torres filed this suit for declaratory and injunctive relief. (Doc. 12). The DOE then moved for summary judgment (Doc. 16), and Torres cross-moved for summary judgment. (Doc. 18).

**III.   LEGAL ANALYSIS**

Review of an agency's response to a FOIA request is conducted *de novo*. 5 U.S.C. § 552(a)(4)(B). The Freedom of Information Act requires federal agencies to disclose documents upon request, unless those documents are exempted from disclosure by statute. *Willamette Indus.*, *Inc. v. U.S.*, 689 F.2d 865, 867 (9th Cir. 1982). The decision to disclose information turns on the nature of the information requested and not on the identity of the requesting party. *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-72 (1989). The FOIA contains nine, narrowly construed, exemptions that permit the government to withhold requested information. *G.C. Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994).

**A.   FOIA Exemption 6**

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Because Torres did not challenge any redactions the DOE made under Exemption 6 in its administrative appeal, it has not exhausted its administrative remedies for redactions made under Exemption 6. Exhaustion of administrative remedies is a jurisdictional prerequisite to

1 brining a FOIA claim in district court. *United States v. Steele*, 799 F.2d 461, 465-66 (9th
2 Cir. 1986). Accordingly, there is no jurisdiction to adjudicate redactions made pursuant
3 to Exemption 6 in this action.

4 The DOE argues Torres' challenges to the redactions it made under Exemption 4
5 are irrelevant because the DOE justified every redaction Torres challenges under both
6 Exemption 4 and Exemption 6. (Doc. 16, Pg. 10). The DOE suggests that redactions
7 challenged under Exemption 4 still stand under Exemption 6. The index of redactions
8 submitted by the DOE, however, does not support this assertion. Page 3-51, for example,
9 explains redactions made on M-Tech's Certified Payroll. (Doc. 17, Exb. A). For
10 redactions made under Exemption 4, it lists "[c]onfidential labor costs and commercial
11 information contained within the certified payrolls pertaining to overtime, standard time,
12 dates and hours worked, (allocation of weekly hours worked and total hours), and gross
13 earnings, relating to employees of the subcontractor, MTech." (Doc. 17, Exb. A). For
14 redactions made under Exemption 6, it lists "[n]ames and individual identifying numbers
15 of workers employed by MTech . . . and specific personal information related to
16 overtime, standard time, dates and hours worked, gross earings, withholding tax,
17 Medicare payments, and net earnings." (Doc. 17, Exb. A). While Exemption 4 is used to
18 justify redacting the confidential labor costs and commercial information, Exemption 6 is
19 only used to justify redacting names and personal identifying information associated with
20 such data. Furthermore, on the actual payroll sheets submitted, "Exemption 6" is
21 stamped near where the name of the employee would be shown, and "Exemption 4" is
22 stamped where the total hours worked would be shown. (Doc. 17, Exb. A).
23 Accordingly, the index supports Torres' assertion that at least some of the information
24 sought was redacted only under Exemption 4. Because Torres properly exhausted its
25 administrative remedies in challenging redactions under Exemption 4, those claims are
26 properly presented.

27 **B.    FOIA Exemption 4**

28 Exemption 4 prevents the disclosure of trade secrets, which are defined as "(1)

commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential." *GC Micro Corp.*, 33 F.3d at 1112 (citing 5 U.S.C. § 552(b)(4)). The government bears burden of proving that the information withheld under Exemption 4 is protected from disclosure. *Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 371 (9th Cir. 1006). Torres concedes that the first two criteria for trade secrets are met, and the parties only dispute whether the information withheld under the FOIA was "privileged or confidential." (Doc. 18, Pg. 4).

The Ninth Circuit employs a two prong test to determine whether information is privileged or confidential. Under that test, information is considered confidential if it is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *G.C. Micro Corp.*, 33 F.3d at 1112 (internal citations and quotations omitted). Here, the first prong is inapplicable because the subcontractors associated with this case are required to submit their payroll information, meaning the outcome of this case has no bearing on the government's ability obtain similar information in the future. (Doc. 16, Pg. 8).

To prove substantial competitive harm under the second prong, the government must "show that there is (1) actual competition in the relevant market and (2) a likelihood of substantial competitive injury if the information were released." *Lion Raisins v. U.S. Dep't. of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004). A common sense approach is applied when determining whether there is actual competition in the relevant market. *Watkins v. U.S. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1195 (9th Cir. 2011) (internal citation and quotations omitted). Although neither party provided much data on this issue, the competitive nature of federal contracts is well-established. *See* 10 U.S.C. § 2304(a)(1) (requiring federal agencies "conducting a procurement for property or services . . . [to] obtain full and open competition through the use of competitive procedures"). Accordingly, to defend its redactions on the ESIF project, the government must show that releasing the requested information is likely to cause substantial

1 competitive injury to MTech and Diamond Fire Protection.

2 Substantial competitive harm occurs when disclosure would allow competitors to
3 estimate and undercut a contractor's bid. *G.C. Micro Corp.*, 33 F.3d at 1115. Whether
4 disclosure would allow a competitor to undercut a bid requires a case-specific inquiry
5 into the nature of the industry involved and the significance of the information being
6 disclosed. The government's burden can be satisfied by producing "government
7 affidavits so long as the affiants are knowledgeable about the information sought and the
8 affidavits are detailed enough to allow the court to make an independent assessment of
9 the government's claim." *Lion Raisins*, 354 F.3d at 1079. Although it is unnecessary to
10 engage in a "sophisticated economic analysis of the likely effects of disclosure,
11 conclusory and generalized allegations of substantial competitive harm are unacceptable
12 and cannot support an agency's decision to without requested documents." *Watkins*, 643
13 F.3d 1189 at 1195.

14 A likelihood of substantial competitive harm is often found when the disclosed
15 information would give a competitor conclusive insight into how it could modify its
16 business to undercut another's. In *Watkins v. U.S. Bureau of Customs and Border*
17 *Protection*, for example, the Ninth Circuit found a likelihood of substantial competitive
18 harm when disclosure of a Customs and Border Protection Notice of Seizure would
19 reveal importers' entire distribution and supply chains, and agency affidavits showed the
20 industry players "zealously guarded" such information. 643 F.3d at 1196. A likelihood
21 of substantial competitive harm was also found when a raison producer sought disclosure
22 of its competitors' Line Check Sheets from the United States Department of Agriculture
23 ("USDA"). *Lion Raisins*, 354 P.3d at 1080. In *Lion Raisins*, the plaintiff claimed
24 disclosing information allowing it to calculate the volume and types of raisins produced
25 by its competitors would not give it a significant competitive advantage because many
26 variables go into raisin production. *Id*. at 1081. The USDA, however, produced
27 affidavits from various industry leaders attesting that the raisin market is highly
28 competitive and if Lion Raisins knew the volume and types of raisins produced by its

competitors, it could undercut prices on the same varieties. *Id*. at 1080-82.

Substantial competitive harm is less likely to be found when the information redacted provides insight into only one of several variables a competitor needs to gain an advantage. In *G.C. Micro v. Defense Logistics Agency*, for example, the plaintiff submitted a FOIA request for certain documents pertaining to the amount of money spent on Small Disadvantaged Business subcontracts under Department of Defense contracts with Loral Aerospace, McDonnell Douglas Corporation, and Northrop Corporation. 33 F.3d at 1111. In response, the government withheld a requested document which estimated the total dollars spent on subcontractors per contract, actual dollars spent on Small Disadvantaged Business subcontracts, and the actual percentage of Small Disadvantage Business subcontracts on each contract. *Id*. The government argued the documents would provide competitors with a roadmap for those contractors "subcontracting plans and strategies," but the plaintiffs prevailed by showing that because the documents did not show how many subcontracts each company had, the subject matter of the subcontracts, or who the subcontracts were awarded too, the document left too many unknown variables in play for competitors to gain an advantage from them. *Id*. at 1112-15.

In the present case, the DOE submitted affidavits from the heads of the subcontractors MTech and Diamond Fire and the primary contractor, J.E. Dunn. The affidavits state that disclosing the hours worked by individual employees, net and gross wages, payroll deductions, and other withholdings would be a competitive disadvantage because the hourly labor rate for the ESIF project is set by the government, meaning the subcontractors' labor production costs could be calculated by multiplying the government's labor rate by the hours worked. (Doc. 17, Exbs. D-F). They attest that labor production rates are treated as confidential information in the construction industry and that disclosing them would allow to competitors to underbid the contractors when competing for work because labor production rates are a significant element of a contractor's price. (DSOF ¶¶ 51-52; Doc. 17, Exbs. D-F). It is undisputed that

information permitting a competitor to accurately estimate a bid price is likely to cause competitive harm.

The essence of this dispute is whether the labor production rate is just one of the many variables that make up a bid, or if the labor production rate is such a significant piece of a bid that release of the data would essentially reveal the bid price, causing substantial competitive harm. Torres does not dispute that labor production rates could be calculated from the information sought but asserts that knowledge of the labor production rate is not enough to allow one contractor to undercut another's bid because other crucial variables, such as costs of materials, overhead, administrative costs, profit margins, and multipliers make up a bid. (Doc. 18, Exbs. B-C).

In support of its position, Torres submitted affidavits from two owner/operators of companies who claim they have years of experience with government contracts and frequently bid on prevailing wage projects. (Doc. 18, Exbs. B-C). The affidavits present broad, conclusory statements without supporting facts. They fail to specifically contradict the central role labor production rates play in bid estimates and are not sufficient to create a triable issue of fact. *See generally Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (noting that "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. Instead, the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial.' Fed. R. Civ. P. 56(e)"). That the DOE has released substantial information to Torres that is useful in evaluating whether Davis-Bacon was complied with is also significant.

The DOE has met its burden on this Motion for Summary Judgment by establishing that a likelihood of competitive harm is beyond dispute. Its affidavits establish conclusively that competitive harm would result if its subcontractors' labor production rates were disclosed. While the exact extent of that competitive harm is debatable, the precise amount need not be determined in this action. Additionally, disclosing the requested wage and hour information could hurt the DOE by impacting the

type and amount of bids received in the future and harm the contractors' employees by altering the wages offered on future contracts.

## IV. CONCLUSION

The Department of Energy's Motion for Summary Judgment (Doc. 16) will be granted, and Torres' Consulting Group's Cross-Motion for Summary Judgment (Doc. 18) will be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 16) is granted, and Plaintiff's Cross-Motion for Summary Judgment (Doc. 18) is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and against Plaintiff and that Plaintiff take nothing.  The Clerk shall terminate this case.

DATED this 27th day of November, 2013.

_____
Neil V. Wake
United States District Judge